## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Everardo Mondragon Tinoco,

          Plaintiff,

v.

Alejandro Mayorkas, in his official
capacity as Secretary of Homeland
Security; Tracy Renaud, Senior
Official Performing the Duties of
the Director, U.S. Citizenship and
Immigration Services; and Laura
Zuchowski, in her official capacity
as Director of the Vermont Service
Center of the U.S. Citizenship and
Immigration Services,

          Defendants.

Case No. 1:20-cv-4787-MLB

_____/

## OPINION & ORDER

On November 24, 2020, Plaintiff Everardo Mondragon Tinoco sued

Defendants challenging the United States Citizenship and Immigration

Services' ("USCIS") unreasonable delay in adjudicating petitions for bona

fide U nonimmigrant status ("U Visa") and corresponding employment

authorization documents ("EADs"). (Dkt. 1.) Defendants move to dismiss

under Federal Rules of Civil Procedure 12(b)(1) and (b)(6). (Dkt. 10.) The Court denies that motion.

## I.     Background

### A.     Statutory and Regulatory Background

In October 2000, Congress enacted the Victims of Trafficking and Violence Protection Act of 2000, Pub. L. 106-386, 114 Stat. 1464, which amended the Immigration and Nationality Act ("INA") and created the U-Visa program. *See* 8 U.S.C. § 1101(a)(15)(U). To qualify for a U Visa, a petitioner must show (1) he "suffered substantial physical or mental abuse as a result of having been a victim of a qualifying crime," (2) he has credible and reliable information about the qualifying crime, (3) he has been helpful, is being helpful, or is likely to be helpful to law enforcement in investigating or prosecuting the qualifying crime, and (4) the qualifying crime occurred in the United States, its territories or possessions or violated a U.S. federal law that provides for extraterritorial jurisdiction. 8 C.F.R. § 214.14(b).

To apply for a U Visa, a petitioner must submit an I-918 Petition for U Nonimmigrant Status as well as a U-Visa certification from a certifying agency stating that the petitioner possesses important

2

information about the crime and will cooperate with the investigation or prosecution. *See id.* § 214.14(c)(1), (c)(2)(i). The USCIS typically processes these petitions in the order received. *Id.* § 214.14(d)(2). If the U-Visa petition is granted, the petitioner receives lawful nonimmigrant status and work authorization that lasts four years. *Id.* § 274a.12(a)(19); 8 U.S.C. § 1184(p)(3).

The USCIS can only issue 10,000 U Visas per fiscal year. *Id.* § 1184(p)(2). In 2007, the USCIS began anticipating that it would receive meritorious U-Visa petitions exceeding this statutory cap. To respond to this potential backlog, the USCIS created a regulatory waitlist program. 8 C.F.R. § 214.14(d)(2). Under this program, once the statutory cap has been reached for the fiscal year, "[a]ll eligible petitioners who, due solely to the cap, are not granted U-1 nonimmigrant status must be placed on a waiting list and receive written notice of such placement." *Id.* The USCIS conducts a substantive review of the petition to determine whether it is meritorious before placing the petitioner on the U-Visa waiting list. Once on the waiting list, USCIS grants the petitioner deferred action or parole and the "USCIS, in its discretion, may authorize employment for such petitioners." *Id.* In December 2008, Congress

3

added language to 8 U.S.C. § 1184(p)(6) stating that the "Secretary [of Homeland Security] may grant work authorization to any alien who has a pending, bona fide [petition] for [a U Visa]."  8 U.S.C. § 1184(p)(6).[1]

### B.    Plaintiff's U-Visa Petition

Plaintiff is a native and citizen of Mexico who entered the United States in March 1997 without inspection and has remained here since. (Dkt. 1 ¶ 18.)  Plaintiff was the victim of a domestic violence incident inside his home at the hands of his former partner.  (*Id.* ¶ 7.)  He assisted law enforcement throughout the investigation and prosecution of the case.  (*Id.* ¶ 31.)  Lieutenant Scott Derek in Athens, Georgia issued Plaintiff a U Nonimmigrant Status Certification on Form I-918, Supplement B.  (*Id.* ¶¶ 8, 32.)  On February 2, 2018, Plaintiff filed his

---

[1] The Court understands some find the term "alien" dehumanizing and offensive.  Nicole Acevedo, *Biden Seeks to Replace 'Alien' with Less 'Dehumanizing Term' in Immigration Law*, NBC News (Jan. 22, 2021, 3:34 PM), https://www.nbcnews.com/news/latino/biden-seeks-replace-alien-less-dehumanizing-term-immigration-laws-n1255350.  The current administration is considering legislation to remove that term from U.S. Immigration laws.  Jorge Lopez and Elizabeth Whiting, *President Biden Issues New Executive Orders and Supports Comprehensive Reform of Immigration Policy*, JD Supra (Jan. 25, 2021), https://www.jdsupra.com/legalnews/president-biden-issues-new-executive-7739651/.  The Court uses the term simply (and only) because it is the term used in the laws at issue.

U-Visa petition.  (Dkts. 1 ¶¶ 12, 33; 1-1; 1-2.)  Plaintiff later completed

biometric fingerprint appointments.  (Dkts. 1 ¶ 12; 1-3.)  His petition

remains pending.  (Dkt. 1 ¶ 33.)

On November 24, 2020, Plaintiff sued Defendants for declaratory,

mandamus, and injunctive relief seeking an order compelling USCIS to

determine his eligibility for placement on the formal U-Visa waitlist so

that he may pursue employment authorization.  (*Id.* ¶ 5.)  Plaintiff sued

Defendants pursuant to the Administrative Procedure Act, 5 U.S.C.

§ 701, et seq. ("APA"), and the Mandamus Act, 28 U.S.C. § 1361.  (*Id.* ¶ 6.)

He asserts two causes of action.[2]  (*Id.* at 9–11.)  Plaintiff's first cause of

action is for "Unreasonable Delay of Determination of Plaintiff's

Eligibility for U-Visa Waitlist" under the APA.  (*Id.* ¶¶ 35–38.)  He claims

Defendants' extensive delay without making eligibility determinations to

place him on the U-Visa waitlist is unreasonable, in violation of 5 U.S.C.

---

[2]  The Court notes both Plaintiff's claims deal with adjudication of his
U-Visa petition, not his employment authorization documents. (Dkt. 1 at
10–11.)  His requested relief, however, includes a declaration that
Defendants are in violation of 8 U.S.C. § 1184(p)(6), the INA regulation
about EADs.  (*Id.* at 11.)  The parties also discuss § 1184(p)(6) and EADs
in their briefs on Defendants' motion to dismiss.  (*See generally* Dkts. 10;
11.)  The Court thus addresses § 1184(p)(6) and Plaintiff's request for
EADs.

§§ 555(b) and 706(1).  (*Id.* ¶ 37.)  Plaintiff's second cause of action is for "Unlawful Failure to Determine Plaintiffs' Eligibility for U-visa Waitlist" under the Mandamus Act.  (*Id.* ¶¶ 39–45.)  He claims he satisfies all the requirements for a writ of mandamus compelling Defendants to determine his eligibility for the U-Visa waitlist.  (*Id.* ¶ 41.)  He contends that once he properly filed his complete and bona fide U-Visa petition, he had a clear right to determination of eligibility for the U-Visa waitlist under 8 C.F.R. § 214.14(d)(2), and a clear right to that determination within a reasonable period of time under 5 U.S.C. § 555(b).  (*Id.* ¶ 42.) According to Plaintiff, once the USCIS received his U-Visa petition, it had a non-discretionary duty to decide within a reasonable time whether he was eligible for placement on the waitlist and because the USCIS has not made a determination it is in violation of 5 U.S.C. § 555(b) and 8 C.F.R. § 214.14(d)(2).  (*Id.* ¶¶ 43–44.)  Both Plaintiff's causes of action claim Defendants unreasonably delayed a determination of eligibility for the U-Visa waitlist.  Plaintiff contends Defendants violated the APA and he is entitled to issuance of a writ of mandamus.  (*Id.* at 9–11.)  Although Plaintiff titles his claims as "unreasonable delay" and "unlawful failure to determine," the content of both claims deals with failure to determine

6

eligibility for the U-Visa waitlist in a reasonable time under the APA and Mandamus Act.

Plaintiff asks the Court to declare Defendants in violation of 5 U.S.C. §§ 555(b), 706(1), and 706(2)(A); 8 U.S.C. § 1184(p)(6); and 8 C.F.R. § 214.14(d)(2).  (*Id.* at 11.)  He also asks for a preliminary and permanent injunction requiring Defendants to determine his eligibility for placement on the U-Visa waitlist.  (*Id.*)  Plaintiff also requests an award of attorneys' fees and costs under the Equal Access to Justice Act.  (*Id.*)  Defendants move to dismiss the complaint under Rule 12(b)(1) and 12(b)(6).  (Dkt. 10.)

## II.   Standard of Review

### A.   Subject Matter Jurisdiction

A motion under Federal Rule of Civil Procedure 12(b)(1) challenges the Court's subject matter jurisdiction.  "[B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case." *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001).  It is presumed that a federal court lacks jurisdiction in a case until the plaintiff shows the

court has jurisdiction over the subject matter. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

A defendant may attack subject matter jurisdiction under Rule 12(b)(1) in two ways—a facial attack or a factual attack. *See McElmurray v. Consol. Gov't. of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). "A 'facial attack' on the complaint 'require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.' " *Id.* (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)) (alterations in original). A factual attack, however, challenges the underlying facts supporting the Court's jurisdiction. *Odyssey Marine Expl., Inc. v. Unidentified Shipwrecked Vessel*, 657 F.3d 1159, 1169 (11th Cir. 2011). When evaluating a factual attack, "the district court is not obligated to take the allegations in the complaint as true." *Id.* Instead, the Court "may consider extrinsic evidence such as deposition testimony and affidavits." *Id.* And from this evidence, the Court may "independently weigh the facts and is not constrained to view them in the light most favorable to the non-movant." *Id.*

8

**B.    Failure to State a Claim**

A court may dismiss a pleading for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."  *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).  Even so, a complaint offering mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).  Put another way, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  This so-called "plausibility standard" is not a probability requirement.  *Id.*  Even if a plaintiff will probably not recover, a complaint may still survive a motion to dismiss for failure to state a claim, and a court reviewing such a motion should bear in mind that it is testing the

sufficiency of the complaint, not the merits of the case. *Twombly*, 550 U.S. at 556; *see also AFL-CIO v. City of Miami*, 637 F.3d 1178, 1186 (11th Cir. 2011) ("[N]otice pleading does not require a plaintiff to specifically plead every element of his cause of action, [but] a complaint must still contain enough information regarding the material elements of a cause of action to support recovery under some 'viable legal theory.' " (quoting *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683–84 (11th Cir. 2001))).

## III.   Discussion

### A.    Subject Matter Jurisdiction

Defendants contend the Court lacks subject matter jurisdiction to hear Plaintiff's claims under the APA and Mandamus Act.  (Dkt. 10 at 14.)   Section 706(1) of the APA states a reviewing court shall "compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).  The Supreme Court has held that "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*."  *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis in original).  Similarly, to show entitlement to mandamus, a plaintiff must show: (1) he has a

clear right to the relief requested; (2) the defendant has a clear duty to act; and (3) no other adequate remedy is available.  *Cash v. Barnhart*, 327 F.3d 1252, 1258 (11th Cir. 2003).

### 1.   U-Visa Waitlist

In Plaintiff's first cause of action, he alleges Defendants failed to comply with their statutory obligation to determine his eligibility for placement on the U-Visa waitlist within a reasonable time, in violation of the APA, 5 U.S.C. §§ 555(b) and 706(1).  (Dkt. 1 ¶¶ 35–38.)  In his second cause of action, he alleges USCIS has not determined whether he is eligible for the U-Visa waitlist, in violation of 5 U.S.C. § 555(b) and 8 C.F.R. § 214.14(d)(2).  (*Id.* ¶¶ 39–45.)  Defendants argue this Court lacks jurisdiction to review Plaintiffs' claims because USCIS's pace of adjudication is discretionary and non-reviewable.  (Dkt. 10 at 14.)

The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.  The Supreme Court "applies a 'strong presumption' favoring judicial review of administrative action."  *Mach Mining, LLC v. EEOC*, 575 U.S. 480, 486 (2015) (citing *Bowen v. Mich. Acad. of Fam.*

*Physicians*, 476 U.S. 667, 670 (1986)).  "Unless 'there is persuasive reason to believe' that Congress intended to preclude judicial review, the Court will not preclude review."  *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051, 2060 (2019) (Kavanaugh, J., concurring) (quoting *Bowen*, 476 U.S. at 670).  The APA requires agencies to conclude matters "within a reasonable time," 5 U.S.C. § 555(b), and authorizes a federal court to "compel agency action unlawfully held or unreasonably delayed," *id.* § 706(1).  The APA, however, prohibits judicial review of an agency action if (1) a statute "precludes judicial review" or (2) the "agency action is committed to agency discretion by law."  *Id.* § 701(a).  Courts thus have jurisdiction under the APA to hear claims brought against an agency for unreasonable delay as long as judicial review is not precluded by statute and the agency action is not committed by law to agency discretion.  *See Norton*, 542 U.S. at 64 ("[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*.").

The decision whether to grant a U Visa is a matter left to the discretion of the Secretary of the Department of Homeland Security.  8 U.S.C. § 1101(a)(15)(U).  Congress, however, also designated the USCIS

as the agency responsible for "[a]djudications of immigrant visa petitions." 6 U.S.C. § 271(b)(1).   There does not appear to be any dispute that the USCIS has an affirmative, non-discretionary duty to adjudicate U-Visa petitions.  The Court would thus appear to have jurisdiction over a claim USCIS refused to adjudicate a U-Visa petition.  But Plaintiff does not allege USCIS refused to process his petition.[3]  Instead, he asserts that a decision on his U-Visa petition has been unreasonably delayed.  The jurisdictional question raised is whether the pace at which a U-Visa petition is adjudicated is a matter of discretion, which lies beyond this Court's jurisdiction.  *See* 8 U.S.C. § 1252(a)(2)(B)(ii) (prohibiting review of any "decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security").  This question has divided courts, including within this district.  *Compare M.J.L. v. McAleenan*, 420 F.

---

[3] The Court acknowledges Plaintiff's second cause of action is "Unlawful Failure to Determine," but the content of his claim relates to the determination of eligibility for the U-Visa waitlist "within a reasonable period of time."  (Dkt. 1 ¶ 42.)  Plaintiff never alleges USCIS singled him out and refused to process his U-Visa petition.  Rather, he alleges the agency's pace of adjudicating his petition is too slow.

Supp. 3d 588, 597 (W.D. Tex. 2019) ("[T]he Court finds that the USCIS has a nondiscretionary duty to adjudicate U Visas within a reasonable time, and therefore the Court has jurisdiction under the APA to review [the plaintiffs'] APA claim that the USCIS failed to adjudicate [the plaintiffs'] U Visas within a reasonable time." (internal quotation marks omitted)) *and Santiago v. Mayorkas*, No. 20-cv-4508, 2021 WL 3073690, at *4 (N.D. Ga. April 16, 2021) ("The Court finds that is has jurisdiction over the plaintiffs' claim under the APA for unreasonable delay in determining their eligibility for the U-Visa waitlist."), *with Arguijo v. U.S. Dep't of Homeland Sec.*, No. 1:20-cv-378, 2020 WL 7585809, at *2–3 (W.D. Mich. Dec. 16, 2020) (finding that the USCIS has the discretion to determine the pace at which U-Visa petitions are adjudicated, so the court lacks subject matter jurisdiction to resolve the plaintiff's claim that his U-Visa petition has been unreasonably delayed) *and Canevaro v. Wolf*, 2021 WL 2283870, at *4 (N.D. Ga. May 20, 2021) ("The Court lacks subject matter jurisdiction over plaintiffs' waitlist claim because they have not alleged a failure to take a non-discretionary action.").

The Court agrees with those courts concluding they have jurisdiction. The regulations promulgated under the INA make it clear

that USCIS is required to determine whether a petitioner is eligible for a U Visa (even if the ultimate decision to issue such a visa is discretionary) and must also place eligible petitioners on the waiting list if the cap applies. *See* 8 C.F.R. § 214.14(c)(5) ("After completing its de novo review of the petition and evidence, USCIS *will* issue a written decision approving or denying form I-918 . . . ." (emphasis added)); *id.* § 214.14(c)(5)(i) ("If USCIS determines that the petitioner has met the requirements for U-1 nonimmigrant status, USCIS *will* approve Form I-918." (emphasis added)); *id.* § 214.14(d)(2) ("All eligible petitioners who, due solely to the cap, are not granted U-1 nonimmigrant status *must* be placed on a waiting list and receive written notice of such placement." (emphasis added)). These provisions are mandatory. So "while the outcome of the eligibility determination is a matter committed to the agency's discretion under 8 U.S.C. § 1101(a)(15)(U), USCIS *must* assess a petitioner's eligibility in order to comply with the *mandatory* requirement to include eligible [petitioners] on the waitlist." *Uranga v. USCIS*, 490 F. Supp. 3d 86, 101 (D.D.C. 2020) (emphasis added); *see also Patel v. Cissna*, 400 F. Supp. 3d 1373, 1383 (M.D. Ga. 2019) ("There is no

dispute that [d]efendants are required by law to decide whether to place [p]laintiff on the waiting list and have not yet done so.").

Because USCIS must adjudicate U-Visa petitions, it follows that they must do so within a reasonable amount of time. Were it otherwise, USCIS could hold U-Visa petitions in abeyance indefinitely, without providing any reasoned basis for doing so, and thwart Congress's mandate that USCIS adjudicate U-Visa petitions. Congress could not have intended to grant USCIS that power. The statutory requirement that USCIS adjudicate U-Visa petitions necessarily implies that it do so within a reasonable time. *Saini v. USCIS*, 553 F. Supp. 2d 1170, 1176 (E.D. Cal. 2008) ("[B]y necessary implication[,] the adjudication must occur within a reasonable period of time, since a contrary position would permit the USCIS to delay indefinitely, a result Congress could not have intended." (alteration adopted) (internal quotation marks omitted) (citation omitted)); *Kim v. Ashcroft*, 340 F. Supp. 2d 384, 393 (S.D.N.Y. 2004) ("[T]he [US]CIS simply does not possess unfettered discretion to relegate aliens to a state of 'limbo,' leaving them to languish there indefinitely. This result is explicitly foreclosed by the APA.").

Defendants contend the Court should follow a recent trio of Western District of Michigan decisions. *See Arguijo*, 2020 WL 7585809; *Barrios Garcia v. U.S. Dep't of Homeland Sec.*, No. 1:20-cv-457, 2020 WL 7585846 (W.D. Mich. Dec. 16, 2020); *Mendez v. U.S. Dep't of Homeland Sec.*, 507 F. Supp. 3d 882 (W.D. Mich. 2020).[4]   The Court, however, finds the reasoning of those cases unpersuasive.

The *Arguijo* court's *entire* analysis focused on its disagreement with the district court in *M.J.L. v. McAleenan*. *Arguijo*, 2020 WL 7585809, at *2–3.   That earlier court determined challenges to the pace of adjudication of a U-Visa petition were within its jurisdiction. *M.J.L.*, 420 F. Supp. 3d at 597.   The *Arguijo* court rejected its conclusion for two reasons. *Arguijo*, 2020 WL 7585809, at *2–3.   First, it found *M.J.L.* "conflate[d] the Secretary's obligation to adjudicate U-Visa [petitions] with questions regarding the pace of such adjudication." *Id.* at *2.   This Court disagrees.   The *M.J.L.* court did not conflate the two but rather used the fact that USCIS has a nondiscretionary duty to adjudicate U Visas to infer that USCIS has a nondiscretionary duty to adjudicate them

---

[4] These three decisions are written by the same magistrate judge and use almost identical language.   For the purpose of brevity, the Court will only analyze *Arguijo*, but the analysis applies to all three cases.

within a reasonable time.  *M.J.L.*, 420 F. Supp. 3d at 595–97.  It concluded the existence of one (a duty to adjudicate) necessarily implies the other (a requirement to do so in a reasonable amount of time).  The *Arguijo* court's reasoning on this point seems to ignore the fact that USCIS must assess a petitioner's eligibility to comply with the mandatory requirement to include eligible petitioners on the waitlist.  *See* 8 C.F.R. § 214.14(d)(2); *Uranga*, 490 F. Supp. 3d at 101; *Patel*, 400 F. Supp. 3d at 1383.

Second, the *Arguijo* court found that the *M.J.L.* court "disregard[ed] the fact that the relevant statutes contain no language (1) establishing a deadline within which U-Visa [petitions] must be adjudicated or (2) articulating guidelines or factors relevant to the question of the pace of adjudication."  *Arguijo*, 2020 WL 7585809, at *3.  While the INA and related regulations do not provide a timeline for how quickly USCIS must adjudicate such visas, "a lack of a timeframe alone does not render the statute optional."  *Rodriguez v. Nielsen*, No. 16-CV-7092, 2018 WL 4783977, at *12 (E.D.N.Y. Sept. 30, 2018).  "The absence of a specified deadline within which action must be taken does not change the nature of USCIS' obligation from one that is ministerial to a matter within the

agency's discretion." *Saini*, 553 F. Supp. 2d at 1176. Although the INA does not specify the timeframe within which a decision on U-Visa petitions should be made, "by necessary implication the adjudication must occur within a reasonable period of time, since a contrary position would permit the USCIS to delay indefinitely, a result Congress could not have intended." *Id.* (internal quotation marks omitted). For these reasons, the Court is unpersuaded by the reasoning in the trio of Western District of Michigan cases.

Based on the foregoing, the Court finds the USCIS has a non-discretionary duty to adjudicate U Visas within a reasonable time. The Court thus has jurisdiction to review Plaintiff's claims that the USCIS failed to adjudicate Plaintiff's U Visa "within a reasonable time." *See M.J.L.*, 420 F. Supp. 3d at 597 (finding that the court had jurisdiction under the APA to review the plaintiffs' APA claim that the USCIS failed to adjudicate the plaintiffs' U Visas within a reasonable time); *Patel*, 400 F. Supp. 3d at 1383–84 (finding that the court had jurisdiction to review the plaintiff's claim that the USCIS's unreasonable delay in deciding whether to place the plaintiff on the waitlist violated the APA); *Uranga v. U.S.C.I.S.*, 490 F. Supp. 3d 86, 101 (D.D.C. 2020) (finding that the court

had jurisdiction because while the outcome of an eligibility determination is a matter committed to the agency's discretion, the government *must* assess a petitioner's eligibility); *Lopez v. Cissna*, No. 2:18-71, 2018 WL 5013830, at *4 (D.S.C. Oct. 15, 2018) (finding that the court had jurisdiction because the defendants had a non-discretionary duty to take action to determine whether a U-Visa petitioner should be placed on the waitlist). "[The USCIS] simply does not possess unfettered discretion to relegate aliens to a state of 'limbo,' leaving them to languish there indefinitely. This result is explicitly foreclosed by the APA." *Kim*, 340 F. Supp. 2d at 393.  The Court thus denies Defendants' motion to dismiss for lack of jurisdiction.

This determination necessarily means the Court lacks jurisdiction to hear Plaintiff's Mandamus Act claim that Defendants failed to adjudicate Plaintiff's U-Visa petition within a reasonable time.  Under the Mandamus Act, "[t]he test for jurisdiction is whether mandamus would be an appropriate means of relief." *Cash*, 327 F.3d at 1258 (citing *Jones v. Alexander*, 609 F.2d 778, 781 (5th Cir. 1980)).  Mandamus is appropriate when: "(1) the plaintiff has a clear right to the relief requested; (2) the defendant has a clear duty to act; and (3) no other

Case 1:20-cv-04787-MLB   Document 14   Filed 08/13/21   Page 21 of 35

adequate remedy is available." *Id.* (alteration adopted) (internal quotation marks omitted) (citing *Jones*, 609 F.2d at 781). Here, the third element is not met as Plaintiff has a remedy under the APA. The Court thus dismisses Count III for lack of jurisdiction. Other courts have reached the same conclusion. *See Ruiz v. Wolf*, No. 20 C 4276, 2020 WL 6701100, at *5 (N.D. Ill. Nov. 13, 2020) ("Because the APA provides a remedy for unlawfully delayed agency action, mandamus is not necessary for relief. Plaintiff is already pursuing her remedies under the APA. This alone is a sufficient basis to deny mandamus relief." (internal quotation marks and citations omitted)); *M.J.L.*, 420 F. Supp. 3d at 598 (same).

## 2. Employment Authorization

As noted above, the parties discuss whether § 1184(p)(6) can support subject matter jurisdiction over claims regarding employment authorizations. While § 1184(p)(6) is mentioned in Plaintiff's requested relief, there is no claim about EADs in his complaint. But because the parties address the issue, the Court does as well.

While a U-Visa petition is pending, but before it is adjudicated, the Secretary of Homeland Security has authority to issue the petitioner an EAD if the petition is determined to be "bona fide." 8 U.S.C. § 1184(p)(6).

Defendants argue 8 U.S.C. § 1184(p)(6) is discretionary and cannot support subject matter jurisdiction over claims regarding employment authorizations. (Dkt. 10 at 19.) Section 1184(p)(6) of the INA clearly and unambiguously states: "The Secretary [of the Department of Homeland Security] *may* grant work authorization to any alien who has a pending, bona fide [petition] for nonimmigrant status under section 1101(a)(15)(U) of this title." 8 U.S.C. § 1184(p)(6) (emphasis added). The statute clearly gives the Secretary the discretion to grant work authorizations to petitioners with pending, bona fide U-Visa petitions. But nothing in the language suggests the Secretary must grant Plaintiff a work authorization if his petition is bona fide. *See Lopez v. Davis*, 531 U.S. 230, 241 (2001) (use of "may" instead of "shall" in a statute means a grant of discretion); *Anderson v. Yungkau*, 329 U.S. 482, 485 (1947) ("[W]hen the same Rule uses both 'may' and 'shall,' the normal inference is that each is used in its usual sense—the one act being permissive, the other mandatory."). Moreover, nothing in the plain language of the statute requires him to evaluate whether a petition is bona fide. *See Gonzalez v. Cuccinelli*, 985 F.3d 357, 366 (4th Cir. 2021) ("[N]othing in § 1184(p)(6) requires the agency to do anything. In fact, the statute shows the agency

22

action is discretionary."). Congress may have contemplated the "Secretary would implement a process for determining whether [a petitioner] should be provided a work authorization prior to being placed on the U Visa waiting list, but it left the ultimate determination to the Secretary, who would presumably decide what to do in his discretion based upon a myriad of factors." *Patel*, 400 F. Supp. 3d at 1379.

As the plaintiff in *Patel*, Plaintiff recognizes the statute says the Secretary may grant work authorization and concedes § 1184(p)(6) gives the agency discretion to grant or deny an employment authorization request.[5] (Dkt. 11 at 9.) *See Patel*, 400 F. Supp. 3d at 1380. Plaintiff argues, however, that the agency has a non-discretionary duty to implement § 1184(p)(6) by adjudicating eligible requests for work authorization. The language of the statute does not support Plaintiff's argument. The statute states the Secretary "may" provide work authorization, not that USCIS must adjudicate every petition to

---

[5] Because there is no statute mandating the Secretary grant work authorization to those with a pending, bona fide U-Visa petition, the logic the Court applied in finding a duty to adjudicate U-Visa petitions within a reasonable time does not apply. The Court will not read such a time requirement into a statute that, on its face, does not require the Secretary to take any action but merely grants him or her the right to do so.

23

determine whether the petitioner would be eligible for work authorization. *See Yusim v. Dep't of Labor*, 645 F. App'x 967, 969 (11th Cir. 2016) (per curiam) (dismissing an APA claim because agency regulations stated the Department of Labor "may participate as a party" at any stage of proceedings and thus did not require the Department of Labor to intervene on the plaintiff's behalf (citing 29 C.F.R. § 1978.108(a)(1))); *cf. Choudry v. Chertoff*, No. 1:07-CV-426, 2007 WL 9706374, at *4 (N.D. Ga. Mar. 12, 2007) (noting the government had a non-discretionary duty to adjudicate an alien's adjustment of status petition based on language in a regulation stating a petitioner "shall be notified of the decision of the director, and, if the petition is denied, the reasons for the denial" (quoting 8 C.F.R. § 245.2(a)(5)). As the Fourth Circuit explained, "Congress explicitly required the Secretary to implement the U-Visa program but remained silent about implementing work-authorization adjudications. This confirms that implementing the latter is not required." *Gonzalez*, 985 F.3d at 368. "Moreover, there are no regulations implementing § 1184(p)(6) . . . ." *Ramires*, 2020 WL 6146393, at *4. Plaintiff's first argument is unavailing.

Plaintiff argues the text, structure, and history of § 1184(p)(6) show Congress sought to create an obligation on behalf of USCIS to implement § 1184(p)(6) and adjudicate employment authorization petitions at the outset of the U-Visa process. (Dkt. 11 at 14.) Courts are divided on this argument. *Compare Patel*, 400 F. Supp. 3d at 1382 (finding, based on "simple statutory interpretation," the court did not have jurisdiction to decide the plaintiff's § 1184(p)(6) claim), *with Rodriguez*, 2018 WL 4783977, at *11 (finding adjudications under § 1184(p)(6) are not discretionary). The Court agrees with the former. In *Rodriguez*, the court found §1184(p)(6) contains specific eligibility requirements. 2018 WL 4783977, at *13. Citing *I.N.S. v. St. Cyr*, 533 U.S. 289 (2001), the *Rodriguez* Court pronounced that whenever Congress authorizes an Executive Branch agency to take some action and places specific eligibility requirements on that authorization, the agency must adjudicate whether a petitioner qualifies under the eligibility requirements. *Rodriguez*, 2018 WL 4783977, at *10–13. "By its terms, however, *St. Cyr*'s 'right to a ruling' applies only when the law in question sets out a precondition to the exercise of discretion, and that precondition is expressed in a 'specific statutory standard.'" *N-N v. Mayorkas*, No.

19-CV-5295(EK), 2021 WL 1997033, at *9 (E.D.N.Y. May 18, 2021). Accordingly, this Court must decide whether the statement that "pending, bona fide" petitions are eligible for discretionary EAD grants constitutes a "specific statutory standard" within the meaning of *St. Cyr*.

The Court disagrees with the *Rodriguez* court's application of *St. Cyr* to the Secretary's discretion to issue EADs to U-Visa petitioners. Section 1184(p)(6) merely states that the Secretary may grant work authorization to any person who has a "pending, bona fide" petition. 8 U.S.C. § 1184(p)(6). Under the plain language, the Secretary cannot just provide work authorization to anyone with a *pending* petition—that would read the bona fide requirement out of the statute. But the statute does not define what constitutes a "bona fide" petition. Congress did not state what the single eligibility requirement—bona fide—meant. That term generally means "genuine" or "real." So the Secretary could grant "genuine" petitions? Perhaps petitions that are obviously sufficient? Or not fraudulent? Or maybe "genuine" means "authentic" in that the petition cannot be for some improper purpose? Perhaps it means it must be "sincere" in that the petition must be made in good faith and with honest representations. All that the Court knows is that "pending, bona

26

fide" petition cannot mean the petitioner is "eligible" or "likely eligible" for a U Visa or Congress would have used those terms.  Someone who is ultimately ineligible could still submit a "genuine" or "real" petition.  It is not clear what Congress meant by "bona fide," and there are no implementing regulations to provide additional guidance.  Congress's eligibility requirement here seems more consistent with an intent to vest the Secretary with maximum discretion.

The precedent relied on in *Rodriguez* is also distinguishable from the circumstances here.  2018 WL 4783977, at *10 (relying on *St. Cyr*, 533 U.S. 289).  The issue in *St. Cyr* was whether Congress, by enacting the Antiterrorism and Effective Death Penalty Act of 1996 and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, which vested substantial discretion in the Attorney General to decide whether noncitizens in some cases could avoid deportation, eliminated judicial review of those decisions by the Attorney General. 533 U.S. at 292–93. The Supreme Court, after a historical analysis of the importance of the writ of habeas corpus and the limitations on its suspension, concluded Congress did not eliminate habeas corpus relief for noncitizens.  *Id.* at 298–314.  There is no indication the Supreme Court intended for its

citation to traditional habeas corpus principles to be interpreted as supporting Plaintiff's conclusion.  "The Court rejects [the plaintiff's] broad assertion that every statute providing eligibility requirements for a discretionary benefit, no matter how vague and undefined, mandates agency adjudication." *Patel*, 400 F. Supp. 3d at 1382.

Whether § 1184(p)(6) supports the Court's jurisdiction over claims regarding employment authorizations is a matter of simple statutory interpretation.  First, the Court examines the statutory text.  Because that examination yields the answer, the inquiry ends.  The Court will not read into the statute rights and duties that do not appear.  Like the plaintiff in *Patel*, Plaintiff argues

> when Congress stated in the statutory language that the Secretary "*may* grant work authorization to any alien who has a pending, bona fide [petition]," Congress also *meant* that the Secretary "*shall* determine for each alien who has filed [a petition] for a U Visa whether the [petition] is bona fide, and if it is, whether the [petitioner] should receive a temporary work authorization while a determination is being made as to whether the alien should be placed on the U[-]Visa waiting list."

400 F. Supp. 3d at 1382.  The Court disagrees.  *See Uranga*, 490 F. Supp. 3d at 101 ("Thus, while Congress gave the government the authority to issue EAD to those with pending, bona fide U-visa [petitions], it did not

require the agency to determine whether any particular [petitioner] was eligible to receive them."); *Ramires v. Wolf*, No. 1:20-cv-203, 2020 WL 6146393, at *4 (D.N.M. Oct. 20, 2020) (finding § 1184(p)(6) does not mandate that the USCIS grant employment authorization to pending, bona fide petitions, or even direct the USCIS to promulgate regulations interpreting "bona fide" or otherwise implement the statute). "Nothing prevents Congress from stating its intention by enacting statutory language that is clear and unequivocal." *Patel*, 400 F. Supp. 2d at 1383. If Congress wanted to impose a non-discretionary duty upon an agency, it has the authority and knowledge to do so. This Court, however, lacks the authority to rewrite a statute that is clear and unambiguous and then order an Executive Branch agency to comply with the Court's creation. To the extent Plaintiff asserts a claim regarding employment authorization, the Court lacks the jurisdiction to review such a claim. *See Cash*, 327 F.3d at 1258 (finding a court lacked subject matter jurisdiction over a mandamus claim because there was no clear duty to act); *Jallali v. Sec'y, U.S. Dep't of Educ.*, 437 F. App'x 862, 865 (11th Cir. 2011) (per curiam) (dismissing APA claim for lack of subject matter jurisdiction when action was not required).

**B.     Failure to State a Claim**

Defendants also contend Plaintiff's complaint should be dismissed for failure to state a claim.  (Dkt. 10 at 23.)

**1.     APA Claim**

Defendants argue Plaintiff's first claim should be dismissed because the USCIS has not unreasonably delayed its U-Visa waitlist adjudication.  (*Id.*)  Under the APA, an agency shall, "within a reasonable time . . . proceed to conclude a matter presented to it."  5 U.S.C. § 555(b).  In assessing claims of agency delay under § 555(b) of the APA, some courts apply a six-factor test articulated in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*").  The Eleventh Circuit has not expressly adopted the *TRAC* factors, but the *Patel* Court acknowledged some courts have found the factors to be helpful in analyzing unreasonable delay claims.  400 F. Supp. 3d at 1383.  The *TRAC* factors are: (1) "the time agencies take to make decisions must be governed by a rule of reason"; (2) "where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason"; (3) "delays that might be

reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake"; (4) "the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority"; (5) "the court should also take into account the nature and extent of the interests prejudiced by delay"; and (6) "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." *TRAC*, 750 F.2d at 80 (internal citations and quotation marks omitted).

"What constitutes an unreasonable delay in the immigration context 'depends to a great extent on the facts of the particular case.' " *Haus v. Nielsen*, No. 17-C-4972, 2018 WL 1035870, at *3 (N.D. Ill. Feb. 23, 2018) (quoting *Yu v. Brown*, 36 F. Supp. 2d 922, 935 (D.N.M. 1999)). Courts are thus split on whether it is appropriate to analyze the *TRAC* factors at the motion to dismiss stage. *Compare Uranga*, 490 F. Supp. 3d at 102–06 (finding that the plaintiff failed to state a claim for unreasonable delay with respect to his waitlist eligibility after analyzing and weighing the six *TRAC* factors), *with Haus*, 2018 WL 1035870, at *4 ("[T]he Court is not prepared to hold on a motion to dismiss for failure to state a claim that the three-year delay in reviewing [the plaintiffs'] U-

visa petitions for placement on the waiting list is reasonable as a matter of law.") *and Gonzalez*, 985 F.3d at 375 ("A claim of unreasonable delay is necessarily fact dependent and thus sits uncomfortably at the motion to dismiss stage and should not typically be resolved at that stage."). The Court agrees with the latter position.

At this stage of the case, the Court has insufficient information with which to evaluate these factors and determine whether Defendants' 34-month delay in deciding whether to place Plaintiff on the waitlist was reasonable.[6] Defendants contend the delay is because of the pandemic, rising petitions, escalating lawsuits, and "many other types of immigration-related priorities."[7] (Dkt. 10 at 29.) "Although it is entirely possible that this delay is reasonable, there is insufficient information upon which to base such a determination at this stage in the

---

[6] Plaintiff filed his U-Visa petition about 34 months before filing his complaint. (Dkt. 1 ¶ 33.) At the time of this order, it has been 43 months since he filed his petition.

[7] Like the defendants in *Rodriguez*, Defendants do not provide how many pending U-Visa petitions have been placed on the waiting list. *See* 2018 WL 4783977, at *20. "These numbers are critical to discerning the rate of review and thus the reasonableness of [the defendants'] delay. Without this necessary information, the Court cannot agree with [the defendants'] argument that 'any delay' in waiting list adjudication is reasonable in light of the high volume of [petitions] the agency receives." *Id.*

proceedings." *Kim*, 340 F. Supp. 2d at 393.   For example, as to the first factor, "[w]hile a 'first in, first out' approach with enumerated exceptions may be a rule of reason, [the court does] not know enough about how the agency implements its rules and exceptions." *Gonzalez*, 985 F.3d at 375. The Court thus finds it premature to address these factors at the motion to dismiss stage.   Plaintiff's complaint alleges enough facts to state a claim for relief.   *See Solis v. Cissna*, No. 9:18-83, 2018 WL 3819099, *5 (D.S.C. Aug. 10, 2018) ("Plaintiffs allege that they are entitled to agency action, that the agency action has been unreasonably delayed because no action has be[en] taken in their case in thirty-seven (37) months, and that they have been adversely affected or aggrieved as a result of the delay. Plaintiffs contend they have alleged sufficient facts to state a plausible claim under the APA.  The court agrees." (internal citations omitted)).

### 2.   Employment Authorization

Defendants contend "[i]n the second count, Plaintiff alleges USCIS has unreasonably delayed or unlawfully withheld an EAD under 8 U.S.C. § 1184(p)(6)." (Dkt. 10 at 30.)  The Court does not construe the complaint to allege such a claim.   As discussed above, while § 1184(p)(6) is mentioned in Plaintiff's requested relief, there is no claim about EADs in

his complaint. Even if there was such a claim, as discussed above, the Court does not have subject matter jurisdiction. The Court thus declines to address whether Plaintiff has stated a claim.

### 3.   Mandamus Act

Because the Court found it does not have jurisdiction to review Plaintiff's mandamus claim, the Court declines to address whether Plaintiff stated a mandamus claim.

### 4.   Attorneys' Fees

Defendants final argument is that Plaintiff's claim for attorneys' fees under the Equal Access to Justice Act should be dismissed "[b]ecause Plaintiff's first three claims should be dismissed." (Dkt. 10 at 32.) Because the Court is not dismissing Plaintiff's APA claim, the Court denies Defendants' motion to dismiss Plaintiff's claim to attorneys' fees.

34

## IV.  Conclusion

The Court **DENIES** Defendants' Motion to Dismiss (Dkt. 10).[8]

**SO ORDERED** this 13th day of August, 2021.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE

---

[8] To the extent Plaintiff asserts a claim regarding employment authorization, the Court grants Defendants' motion to dismiss as to that claim because the Court lacks jurisdiction.